**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **TAIEB ZIAT** | ) | |
| | ) | **Case No. _______________** |
| | ) | |
| **Plaintiff,** | ) | **JURY DEMANDED** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CARLEX GLASS AMERICA, LLC** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## COMPLAINT

---

Plaintiff Taieb Ziat ("Plaintiff" or "Ziat") alleges the following claims against Defendant Carlex Glass America, LLC ("Defendant" or "Carlex"):

## NATURE OF THE CASE

1. This is a civil action seeking damages under the Family and Medical Leave Act (29 U.S.C. § 2611, *et. seq.*) ("FMLA").

2. As Mr. Ziat prepared to return from legally protected FMLA leave, Carlex terminated his employment for expressly exercising his rights under the FMLA, in a textbook case of unlawful retaliation.

## PARTIES

3. Plaintiff Taieb Ziat is a resident of Davidson County, Tennessee who was employed by Carlex in Wilson County, Tennessee.

4. Defendant Carlex Glass America, LLC is a limited liability corporation organized under the laws of the state of Delaware with its principal place of business at 7200 Centennial Blvd, Nashville, TN 37209.

**JURISDICTION, AND VENUE**

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1331, 28 U.S.C § 1332, and 28 U.S.C § 1343(a)(4).

6. Venue is proper in this Court pursuant to 28 U.S.C § 1391(b), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

7. This Court has personal jurisdiction over Defendant because it employed Plaintiff in this District and its principal place of business is in this District.

**FACTS**

8. Mr. Ziat was employed as a Business Analyst by Carlex from May 20, 2024 until he was unlawfully terminated on April 3, 2026. In that role, he collected and analyzed data to be used by various departments across the Company's business.

9. Mr. Ziat performed his role well, and he received praise from Company leaders regarding his performance.

10. On December 19, 2025, Mr. Ziat met with his Director, Ryan Loper, to discuss changes to the department that were anticipated in 2026.

11. On Tuesday, December 23, 2025, less than 24 hours after Mr. Ziat requested FMLA leave, the Company initiated an external search for Mr. Ziat's exact role.

12. On January 2, 2026, Mr. Ziat was approved for FMLA to care for his son with special needs. His FMLA leave was approved through March 30, 2026.

13. Mr. Ziat has an autistic son, and Mr. Ziat has to take his son for medical treatment and various therapies, which he made known to Carlex.

14. Carlex did not pay Mr. Ziat his 2025 bonus, which was payable while he was on FMLA leave.

15. During Mr. Ziat's approved FMLA leave, Mr. Loper e-mailed Mr. Ziat on March 23, 2026 to "outline expectations and ensure alignment."

16. Just three days prior to Mr. Loper's e-mail, on March 20, 2026, Carlex again posted to fill a Business Analyst role in Lebanon, Tennessee, which is the exact role that Mr. Ziat held.

17. In Mr. Loper's March 23, 2026 e-mail he attempted to mischaracterize the December 19, 2025 meeting as a "review" of "performance concerns" with Mr. Ziat. Prior to his leave, in the meeting, the discussion was characterized as a discussion of departmental changes, while after his protected FMLA leave (and prior to the leave even ending) the meeting was re-cast as a meeting to discuss Mr. Ziat's performance, which was false.

18. Mr. Loper's March 23, 2026 e-mail went further and said that Mr. Ziat needed to "demonstrate sustained improvement" and that "failure to do so may result in further performance management action, up to and including formal disciplinary measures."

19. Mr. Ziat was taken aback by the re-casting of a meeting to discuss departmental changes into a "performance management action."

20. Mr. Ziat (while still on approved FMLA leave), responded to the e-mail taking issue with the mischaracterization, and expressly alleging FMLA retaliation.

21. In light of the fact that Carlex was actively interfering with and retaliating against his FMLA leave, Mr. Ziat made a proposal for a mutual separation.

22. Carlex HR responded to Mr. Ziat's e-mail that the Company was "not closed to the idea of reaching an agreed separation" and made a counteroffer to Mr. Ziat's proposal for an agreed separation.

23. Since the Company's counteroffer was unacceptable to Mr. Ziat, he engaged counsel to attempt to negotiate his separation.

24. Mr. Ziat's counsel sent a letter to the Company on April 1, 2026, further alleging FMLA retaliation and making a counteroffer for an agreed separation.

25. The Company engaged counsel who responded to Mr. Ziat's counteroffer by letter on April 2, 2026, with yet another counteroffer by Carlex.

26. Since the Company's second counteroffer for an agreed separation was unacceptable to Mr. Ziat, he responded through counsel on Friday April 3, 2026, that he would return to work the following Monday, since the parties were unable to reach agreement on a mutually agreed separation.

27. Within four hours of receiving word that Mr. Ziat would be returning from his FMLA leave since the parties could not reach a mutual separation agreement, the Company terminated his employment by e-mail. The reason that Carlex articulated for Mr. Ziat's termination were: (1) "performance concerns expressed in the past" and (2) "conduct during our recent discussion of a possible agreed upon departure."

28. The first reason ("performance concerns expressed in the past") is clearly pretextual because the performance concerns had not, in fact, been expressed, and even if they had been, they had not justified termination, as evidenced by the discussion of Mr. Ziat's return to work.

29. The second reason ("conduct during our recent discussion of a possible agreed upon departure") is express FMLA retaliation because the only "conduct" during the discussion of a

potential mutual departure was Mr. Ziat threatening to file a FMLA lawsuit and indicating he would return from his FMLA leave when discussions of a mutually agreed separation broke down.

**COUNT I: FMLA RETALITION**
**29 USC §2615(a)**

30. Plaintiff realleges and incorporates by reference Paragraphs 1 through 29 as if fully stated herein.

31. Carlex is an employer within the meaning of the FMLA since it employes 50 or more employees within a 75-mile radius.

32. Plaintiff is an employee within the meaning of the FMLA, since he had been employed for more than 12 months and had worked at least 1,250 hours in the 12 months preceding his leave.

33. Plaintiff was approved for and took FMLA leave.

34. During Plaintiff's FMLA leave, Carlex retaliated against him by: (1) posting to fill his position while he was on leave, (2) mischaracterizing a discussion of departmental changes as a discussion of Mr. Ziat's performance, (3) withholding his 2025 bonus, and (4) threatening "formal disciplinary measures."

35. When Mr. Ziat made it clear that he would return from FMLA leave, Carlex expressly terminated his employment because of it.

36. As a result of Defendant's retaliation for Plaintiff's use of FMLA leave, Plaintiff is entitled to back pay, front pay, pre-judgment interest, reasonable attorneys' fees, and costs.

37. Plaintiff is entitled to an equal amount of liquidated damages under the FMLA, since Defendant did not act in good faith and with reasonable grounds in retaliating against him for his use of FMLA leave.

**COUNT II: FMLA INTERFERENCE**
**29 USC §2615(a)**

38. Plaintiff realleges and incorporates by reference Paragraphs 1 through 37 as if fully stated herein.

39. Carlex is an employer within the meaning of the FMLA since it employes 50 or more employees within a 75-mile radius.

40. Plaintiff is an employee within the meaning of the FMLA, since he had been employed for more than 12 months and had worked at least 1,250 hours in the 12 months preceding his leave.

41. Plaintiff was approved for and took FMLA leave.

42. During Plaintiff's FMLA leave, Carlex interfered with his leave by: (1) posting to fill his position while he was on leave, (2) mischaracterizing a discussion of departmental changes as a discussion of Mr. Ziat's performance, (3) withholding his 2025 bonus, and (4) threatening "formal disciplinary measures."

43. Carlex further interfered with Plaintiff's FMLA leave by failing to reinstate him at the end of his leave.

44. As a result of Defendant's interference with Plaintiff's use of FMLA leave, Plaintiff is entitled to back pay, front pay, pre-judgment interest, reasonable attorneys' fees, and costs.

45. Plaintiff is entitled to an equal amount of liquidated damages under the FMLA, since Defendant did not act in good faith and with reasonable grounds in interfering with his use of FMLA leave.

WHEREFORE, Plaintiff prays for the following relief:

1. A jury to try his claims.
2. Entry of judgment in favor of Plaintiff for back pay, front pay, and other damages and equitable relief.
3. Entry of judgment in favor of Plaintiff, and against Defendant, for liquidated damages under the FMLA.
4. An award of Plaintiff's costs, reasonable attorneys' fees, and pre- and post-judgment interest.
5. Any other legal or equitable relief to which Plaintiff may be entitled.

This 17th day of April 2026.

Respectfully submitted,

/s/ Ben H. Bodzy
Ben H. Bodzy (TN BPR No. 23517)
BODZY LAW PLLC
10 Burton Hills Boulevard, Suite 400
Nashville, TN 37215
(888) 215-6060 (phone)
bbodzy@bodzylaw.com

*Counsel for Plaintiff*